Good morning, Your Honor, members of the panel. John Moore of Moore Law Group on behalf of Appellants Richard Thompson and Kevin Battershell. The purpose of this appeal is to review the U.S. District Court of Nevada's decision, order, and granting of a motion for summary and judgment in favor of the defendants, even though disputed issues remain for review by the trier of fact, which in this case is a jury. As stated in our brief, the U.S. District Court's role when considering a motion for summary judgment is to determine if material issues of fact exist for trial and if these issues of dispute are genuine. Issues of dispute are genuine if a jury, after hearing all of the facts, could return a decision for either party, either the plaintiff or the defendants. A district court is not himself to weigh the evidence to determine the truth of the disputed issues or which version of the facts as presented to the judge is correct. In this instance, there are several issues of disputed fact which were presented in the briefs to the court, and it is our reviewing these contentions to see if disputed issues existed that the trial court in this instance granted the motion for summary judgment, weighing the facts himself. If no disputed issues of fact remain for trial and there can be just one reasonable conclusion from the facts that are reasonable minds could differ as to the impact of the evidence or what the evidence is, the district court must deny the summary judgment motion. When considering a motion for summary judgment, the substantive law underlying the complaint must be reviewed as well. In this case, the substantive law at issue are claims of excessive use of force by off-duty officers of the city of Sparks Police Department. Excessive use of force claims are governed by the Fourth Amendment guarantee of freedom from unreasonable searches or seizures by the government. Well, let's advance this just a little bit here. Certainly. So was the law clearly established with respect to the point? Let's separate out the pointing of the gun and the handcuffs. Right. Was the law clearly established regarding the pointing of the gun? It seems like the Robinson case guides us here, Robinson v. Solano. Correct. Robinson v. Solano County, Your Honor, I believe, is a Ninth Circuit court decision that states that pointing of a gun at a detainee who doesn't pose a significant threat can be a violation of the Fourth Amendment. And we contend that the disputed issues of fact in that instance support the denial of summary judgment in this case. We believe Dick Thompson, who had the gun pointed at him, states one thing and the officers, in some instances, state something else. What we do know is that these officers, the disputes of fact that support the denial of summary judgment in this instance in favor of Dick Thompson are that these officers who were off-duty did not identify themselves as police officers. Of course, the defendants state otherwise. I guess I would like for you to focus on perhaps the fact that Mr. Battershell seemed to clearly show more aggression than the plaintiff in Robinson. I would agree with you, Your Honor. I would agree with you on that. He hit the windows of the ambulance, and then the ambulance sounded an alarm. And the alarm is what I want to sort of focus on here, because based on these facts, would a reasonable officer, which we have to look at, would a reasonable officer in the position that these officers were in, or I guess in this position, know that his reactions were clearly unlawful under Robinson? The response, Your Honor, I don't believe we are contending that the officers getting out of their vehicles and responding to something that they may have perceived that may have been criminal in nature is problematic. It's how they responded once they got to the vehicle, and then also after Mr. Battershell was placed in handcuffs. And wouldn't that matter? Wouldn't that matter as to whether the perception was misdemeanor versus felony? Well, in this instance, Your Honor, there's a contention by the city of Sparks that this is a felony, and that's an incorrect review of Nevada law. Nevada law states that if you knowingly assault someone, a person who is an attendant in an emergency vehicle, then it's a gross misdemeanor. Now, for the record, I don't believe it's disputed. This vehicle was not marked as an emergency vehicle. I believe it was a SWAT ambulance. So it had no markings. Is there even evidence that the officers who came to the car – so I understand there were several vehicles of officers. So there were the officers who were in the van that had the alarm, but am I right that the officers who actually came to the car and detained the plaintiffs were not the ones in the van? That's correct. I believe there was one person driving the van, and then the officers, five additional officers, were in vehicles in front of the van. And so have the officers who were in the vehicles in front even said that they knew anything about the hitting of the van? Yes. One officer did state that he did. He looked in his rearview mirror, and he saw my client, Kevin Battershell, returning to Dick Thompson. What about the others, though? I don't believe the others – Because that was Markinado, right? Yes. I believe one officer stated that he saw – believed what he saw had happened, and the other officers did not know. How about the hearing of the alarm, though? Doesn't that affect this a little bit? I mean, if officers are hearing an alarm, it alerts them, they react, and aren't they reacting? Certainly, Your Honor, I agree with that. But again, focusing – Did the other officers hear an alarm, or was it over by then? I don't know. I do not know if the other officers stated that they heard the alarm. Again, I don't want to focus on what caused the response. It's what happened after the response. Talk about that, then. Well, wait, but hold on. Sorry. I'm not sure about that. So why – if they did hear – so I'm not sure they actually have said they knew anything about the alarm or even had reason to think there was a crime. But let's assume for now that they did think there was a crime going on. Certainly. Could they – could they transfer what Battershell had done to Thompson? So like when we're thinking about how they held Thompson at gunpoint, does it matter what Battershell had done for what they do to Thompson, in your view? And can you tell us about anything else on that? I believe they have to look at it as a whole. I believe they have to look at both men. Mr. Thompson, what did he do when they came and were pointing a loaded weapon? He saw one of the officers load his weapon as he got out of one of the vehicles. What did he do? Dick Thompson raises his hands immediately when they tell him to. They then tell him to put his hands on the wheel, and he did. He left his hands there. But, okay, but the two guys are together. So if they think Battershell did something, can you impute that to Thompson or no? I'm not sure what your answer is there. I believe it's as a whole. You look at the whole thing. So yes, what Kevin Battershell had done was why they responded. But once you respond, that doesn't end the inquiry. It's how you treat detainees after the response. Mr. Thompson's sitting there with his hands on the vehicle, and he looks over, concerned about Kevin, and the officer who had a loaded weapon pointing it at him with his finger on the trigger poked him in the head with his gun, the muzzle of his gun. And this officer smelled of alcohol. That hasn't been disputed at all by the defendants in this case. One slip of the finger, and this is a completely different case. Additionally, after they pulled Kevin from the vehicle, the issue that I want to focus on here and that I believe supports a denial of a motion for summary judgment are the disputed facts about how the handcuffs were placed on Mr. Battershell. Did he complain of pain? He did. In his declaration, his affidavit that he filed in support of our opposition to the motion for summary judgment, which you can find at page 290 of the joint appendix, he stated that they were digging, the handcuffs were digging into his hands. They were so tight into his wrists that he asked to have them loosened because of the pain associated with that. I just don't remember if he said it's because they were hurting him. I believe he does say that in his affidavit, Your Honor. I believe he does say that. So I don't think he actually does. In his affidavit, I don't think he says, I told the police that the handcuffs were hurting me. But I also haven't been able to find any case that says that he was required to say that. So that's one question. Another question is, how did this play out at summary judgment? So as I understand it, they made the argument in their reply brief that he didn't make that allegation, that for the first time. So am I right that there has been no further submission from your clients since they made the argument that he needed to explicitly tell us whether he said anything about pain or not? There has been no submission, Your Honor. And for the record as well, this case was decided without any discovery. It was decided before an answer had even been filed in this case. And so there's been literally no discovery on many of these issues. He complained about – Kevin complained about that and asked that they be loosened. And according to Kevin, which is disputed by the defendants, one of the officers then came and squeezed the handcuffs, causing additional pain. Now, the defendants claim that the officer came and checked to see if they were loose. That's a disputed issue of fact. The Court in this case sided with the defendants. In its brief granting the motion for summary judgment, the Court specifically finds that that's the case. Well, that's a disputed issue of fact. He says he went to a doctor, but it seems like there was some kind of evidentiary issue with the doctor's report or something. Can you explain what happened? Was it not authenticated? How was this report, medical report, submitted? The medical report itself was not submitted. In his declaration, he states that he went to a doctor and that the doctor confirmed that he suffered injuries to his wrists as a result. And that was excluded as hearsay? I believe so. I thought there was also a statement that the report was not authenticated. I don't believe that the report was authenticated. So you tried to submit it, but without authentication from the doctor? Is that what happened in whatever was submitted? We did. We attempted to submit it, Your Honor. Based on Mr. Battershell's declaration on his affidavit. So he said, this is my medical report? Right. That is correct. And then after the first instance of complaining, he complained two additional times, because you've got to remember, Mr. Battershell was in handcuffs for 45 minutes as this happened. And according to him, they were tightened as far as they could go. So for 45 minutes, he sat there in pain. And three times during that 45-minute span, he asked that the handcuffs be loosened. And that is all disputed. Those are issues that, according to the Lalonde case, Lalonde versus County of Riverside, I believe, that states that the over-tightening of handcuffs alone can be an excessive force. If there is evidence that the handcuffs were tightened fully, as stated by Kevin Battershell, Kevin stated that the handcuffs were digging into his wrists, causing pain, that the officer squeezed the cuffs when Kevin asked to have them loosened, and that the officers ignored his two other requests. I believe, under the Lalonde versus County of Riverside case, that that would support the denial of a summary judgment, because those are disputed by the city of Sparks. Would you like to save your... Oh, go ahead. What ultimately happened to the charges against Battershell? They were dismissed. Can you... Do we know why? Is that in the record? I don't. The county, Lyon County District Attorney dismissed those charges. I do not know the specifics of that, and that is something that we would delve into if discovery is permitted. And then also, in the... You have only a minute and a half, would you want any rebuttal time? A minute, so I'll wrap up. The pointing of the gun and poking of Mr. Thompson also established a denial of a motion for summary judgment, because those issues are disputed. And so, I would leave it at that, save one more minute. Good morning, and may it please the Court. My name is Doug Thornley. I represent the city of Sparks and the six police officers named in this case. I think at the outset, the Court has identified the proper analysis in terms of how to look at this case. And the relevant question here is whether a reasonable police officer would have understood the alleged response in this case to violate the Fourth Amendment under the laws that existed at the time of the incident. Turning first to the pointing of the gun, Robinson is the controlling authority in the Ninth Circuit. But what Robinson stands for, the basic thrust of the holding, is that an apparently unarmed and cooperative suspect, who is accused of no more in that case than a misdemeanor, should not have a gun pointed at his head in response to coming down the driveway and addressing the police officers to say, hey, guys, I'm here to help. That's obviously not what happened in this case. In this case, Mr. Battershell agrees that he exited his vehicle because he was unhappy that he was cut off in traffic 15 minutes ago. He then advanced on the van and assaulted the driver of the vehicle. That's not disputed. There's probable cause to arrest Mr. Battershell for assaulting the driver of the van. Is it disputed whether the van was marked, though? No. The van was not marked. It was black with tinted windows. But I don't think that's the case. And how many officers knew that he had hit the vehicle? One, Your Honor. But there is a long line of cases that say in the context of determining probable cause, the knowledge of one officer is imputed to all the officers on the scene. Only when they've communicated, though, right? No. That is not my understanding. Can you cite a case where it's imputed when there is no evidence that they talked about it? Off the top of my head, Your Honor, I cannot. But what I can say is if one sees them, what the others see is the response from the officer who saw it. So all of the officers in their affidavits to the motion for summary judgment do say that they heard the emergency alarm. I see that now, yes. And they see Detective Marchinato grab his firearm and exit the vehicle. Reasonable police officers would view that behavior as there's trouble somewhere. Detective Marchinato should not go alone. But that doesn't mean they have reasonable suspicion of a felony. I mean, you're saying they actually knew that whatever was this thing that might be wrong could be a felony.  That is not what I'm saying. I actually don't think the distinction between misdemeanor and felony is important at all in this case. So how do they even know that whatever is wrong is a misdemeanor? Why don't they think maybe someone's injured in the van? I mean, how do they have any idea what's wrong here? Well, the other officers, other than Detective Marchinato, may not. But Detective Marchinato has said he saw Mr. Battershall pounding on the side of the van. And so when the alarm goes off and Battershall retreats to the truck, he creates what's universally recognized as a dangerous situation for police officers. I think it's beyond debate that approaching a suspect seated inside an automobile under circumstances that mirror this case presents an objectively ---- But what's the danger, what's the crime they think he committed at this point that presents the danger that you're talking about? At this juncture, Your Honor, they have probable cause on the assault, so there is the crime. The danger ---- Which is a misdemeanor, right? Well, it could be a misdemeanor, it could be a felony. But is there any evidence here that anyone had any basis to believe there was a felony? In Nevada, it actually is not. You know, one type of felony is if you knowingly attack a law enforcement officer or a provider of medical care. But another type of felony is if you have the present ability to gain access to or use weapons. But did they have any reason to think he had a weapon at that point? I don't know, Your Honor, but I don't think that police officers ---- Well, no, if you don't know, I mean, it's an odd thing to have a case like this decided with no discovery. And so he tells his story and now you tell us your story, which I credit the officers in their depositions. But of course, we have to construe the facts against the movement. It's hard to ---- for me to understand why we shouldn't ---- there shouldn't at least be discovery and why factual issues aren't created here. I'll tell you first with the issue of discovery, Your Honor, that when you receive the complaint, you have the option of filing a motion to dismiss or answering it. And in this case, we had done an extensive internal affairs investigation and we would have filed a motion to dismiss, but we have all sorts of evidence. So we decided to call it frankly what it was and deem it a motion for summary judgment. I don't think that that alone is an appropriate reason to send it back to the district court. Oh, no, it's not. That's not a reason, but it's a gamble you take when you file the motion without any discovery and then the other side raises issues. For example, you know, if we move beyond misdemeanor or felony and we just go to the handcuffing, the judge says, well, I think they just did the squeezing to check. They say, no, no, they are actually squeezing even harder to do that, and he did it because he was tightening. I don't know. But right there in terms of what happened with the handcuffs, I can't figure it out here, but it seemed the district court kind of landed on a decision. Well, I'd be happy to help you with the handcuffs, Your Honor. Okay. Mr. Battershall has conceded that the handcuffs were not tightened. He alleges that they were squeezed, but he concedes that they were not tightened. And squeezing the handcuffs actually makes quite a bit of sense when you understand how handcuffs are applied. But he says they were too tight the whole time. Right. So why does it matter if they were tightened? They were as tight. He says they were as tight as they could go. He said loosen these up is what he's saying. Well, he has said that now, that they were as tight as they could go from the beginning. And I think he says that now. But what he says now is all we have. He has a declaration. We have two different accounts, right? This goes back to bringing the motion early like he did in gambling. Because you don't know what's going to come out. I understand. And I think the point here is these are the facts alleged by the plaintiff. Right? The question here is, is there a constitutional violation on the facts as alleged by plaintiff? That's all we're dealing with. There is no dispute at this juncture. And don't we have case law that says handcuffs that are way too tight could be excessive force? The case law that you have with respect to handcuffs is it's always handcuffing plus. It's never handcuffing in a vacuum. There is no case that says plainly handcuffs alone. The application of handcuffs alone. It says tight handcuffs can constitute excessive force. That's the Lalonde case that counsel was talking about. I believe that's an oversimplification of the holding, Your Honor. The handcuffing cases always include rough handling of the complainant.  Purple hands. Mushy wrists. There's a clear indication that the handcuffs were applied incorrectly. These cases also require, in response to Judge Freeland's earlier question, they do require that there be a complaint. Where is there a case that says you have to complain of pain for you to have a claim? I've not found one. The Seventh Circuit has so held, Your Honor. Not in this Court, though. Not in this Court. But it is implied, because without And here he complained three times. And he was examined three times, Your Honor. He's said as much. Well, that's disputed. He says they squeezed it three or whatever. Your Honor, it's not. You don't have to take my word for it. You can listen to Mr. Battershall's IA interview, where he says that every time he asked for the handcuffs to be adjusted, a police officer, who is unidentified, came over and, using the same procedure every time, checked the handcuffs and said, no, that's how they're supposed to fit. That's what they said. That doesn't mean it's true. He says, no, they were — his account is they were squeezing them, and then they say they're right. But, I mean, that's a fact dispute, isn't it? I don't think that it is, Your Honor. Mr. Battershall said that the handcuffs were not made tighter. Certainly, if the handcuffs were made tighter, there would be a — But what's your best case on that? What's your best case on your theory? My best case on my theory? Well, I think that Lalonde stands for that principle. As you read Lalonde, Mr. Lalonde was being investigated for a disturbance of the peace late at night. He had on a T-shirt, and I believe he had his underwear on and was holding a sandwich. The police officers came through the threshold of his apartment, grabbed him by his hair, forced him to the ground, sprayed OC, or pepper spray, in his face, and roughly handcuffed him. But, I mean, okay, that's true, but there's a separate section in Lalonde, a separate holding, that says a series of Ninth Circuit cases has held that tight handcuffing can constitute excessive force, period. I mean, yes, there then was pepper spray, but that's not part of the discussion of the handcuffing in that case? I disagree, Your Honor. That line of cases, in all of Go's cases, there are objective signs of pain. There are complaints that went unaddressed. Just because the officers declined to adjust the handcuffs at his request doesn't mean that there is a Fourth Amendment violation. Sotomayor, this is where I'm having, I'm going to take everything, which we wouldn't on summary judgment, we're going to credit as true the officers, which is, we went over there three times. The squeezing, so to speak, is just a check to see what the, whether it's too tight. I looked at it, I did it, it wasn't too tight. His testimony is, no, I told them that they're too tight. And that then they came over and they dispute how many times this occurred. They didn't make them looser. They're still too tight. So it seems to me to be, although an uphill battle perhaps, you know, for the plaintiff in light of what might be standard practice of how you determine if they're too tight, it's hard to say that there isn't a disputed issue of fact here. Because where he says they're too tight, they say, no, this is how they're supposed to be, and we know we've been doing this a while. Well, Your Honor, the concurring question is why isn't that a factual issue? Because ultimately it doesn't matter if they were too tight. The principle of qualified immunity, Your Honor, stands to protect police officers from this type of judgment call. Without evidence that they're too tight, it doesn't matter whether they're too tight. The case tells us, I mean, I mean, if they're — it does matter, and it may be a question of degree, and you're just saying there's not enough degrees here for it to matter, but it does matter in the case law, doesn't it? As I read the case law, Your Honor, I believe there is a distinction to be had. In all of those cases, there's an objective sign of injury. There is a reason beyond the mere request that a police officer standing in that position would know that the handcuffs were improperly applied. So Lawland has decided in 2000 and has a statement that says a series of Ninth Circuit cases has held that tight handcuffing can constitute excessive force. How is that not clearly establishing that tight handcuffing can constitute excessive force? It doesn't say when there's a complaint. It doesn't say when — it doesn't say anything else like that. And it may be it's a fact to speak. It goes on to say it turns on credibility of the witnesses whether it actually is too tight. Respectfully, Your Honor, with regard to whether or not there is a complaint, if there is no complaint and there is no objective sign of injury, how would the officers know if there was a problem? He's saying they're too tight. That's not what his — I also don't read his affidavit to say that. I read his affidavit to say the handcuffs were uncomfortable, and on that basis, I asked for them to be relaxed. But do you agree that you didn't make this argument that the case law requires him to have said they were too tight until after he had submitted that declaration? So he submitted the declaration. He thought it was enough. Then you came back with this argument he really needed to say it was too tight. That was in your reply brief, right? That was — well, in this instance, Your Honor, I think that the Fourth Amendment complaint with respect to Mr. Battershall has been a bit of a moving target. So I don't — I don't read the complaint itself as making the allegation. I follow — Well, he says they're too tight and I complained, and then you — and I asked for them to be loosened. So reasonably construing that, I think we could — we could construe that as, well, he probably indicated in some fashion that they're too tight. But you then say, no, he needs an explicit statement to the officers that they're too tight. I'm not sure we know yet whether he can say that he did that or not, because there was never a discovery. So — and the briefing was done by the time this issue arose. I would actually go a step further and say, Your Honor, that a — that a police officer need not credit everything that a detainee say. And in a case where someone says, these handcuffs are painful or these handcuffs are too tight, what I believe the Fourth Amendment obligates, and as I read the cases, what I believe the Ninth Circuit believes ultimately the — the Fourth Amendment obligates, is that the officers check the fitment of the handcuffs to confirm that they are either on properly or they are not. And if they are not, then the officers need to take steps to remedy that situation. So you might win this case. I mean, maybe they really did check, and they'll testify at trial, and they'll say we checked, and the jury will believe them. But how do we know they really were doing that instead of squeezing them like he says? I think that qualified immunity protects the judgment call at the — at the end of that equation. So where a police officer checks, and Mr. Battershell agrees that they checked, every time he asked for them to come over and examine the fitment of the handcuffs, an officer that he can't identify came over, looked at the handcuffs, squeezed them to check that they were double-locked, and the parties agree that the handcuffs were put on in a fashion that indicates that they were double-locked, when an officer decides these handcuffs are on the way I've been trained to put them on, or these handcuffs are on in an appropriate fashion and I don't see any objective sign of injury, I believe that qualified immunity protects that judgment call. Where do we see in the record him interpreting what the officer did as the officer checking? I don't think that you see that anywhere in the record, Your Honor, but I believe that his accusation is an unsupported conclusory allegation, and it's not sufficient to defeat summary judgment, especially in a case where he can't identify who did it. Well, again, that's because we haven't had discovery yet. I mean, you know, he may be, you know, maybe he'll be able with some photos or whatever to identify. Or asking in depositions. Asking who actually did the handcuffing, and some officer's going to have to come forward. Or maybe they show up at the deposition because he subpoenas these guys and he looks at them. I mean, what he says is, the handcuffs were digging into my wrist bones, I asked if they could be loosened, one of the armed men looked, squeezed, caused pain, told me they're not too tight, 45 minutes, and then he talks about when they lift him up and the guy says, I'm the blank police. So that's his statement, like it or not, that's his statement. So we're just having trouble, I think, understanding why at this stage there's not a factual dispute. Because under your theory, the police would always be right, because they would say, that's my procedure, I followed my procedure, that's what I did, end of story. I see that I'm out of time, Your Honor, but if I might. Yeah, please. If I led you down the road of the police would always win, I apologize for that. I think that. Well, I don't think you meant that, but I'm just saying that might be the consequence. Yeah. And I think that the opposite is true when you deal with the idea that just because he asked, he is entitled to have the handcuffs relaxed. Just because he asked doesn't mean the Fourth Amendment requires the handcuffs to be relaxed. It means that the police officers are required to check. And when they make the judgment call that they're on properly, and when the – I mean, since we're dealing with the undisputed evidence, Mr. Battershall has conceded that the handcuffs were not made tighter by the squeezing. I mean, perhaps that is the – Did he say that? In the reply brief. In fact, twice in the reply brief. But we haven't in – You're just saying he didn't specifically say that, and therefore, they had to be made or he said that? No, no. I'm sorry. He concedes that the handcuffs were not made tighter. Well, he says they were as tight as they could be. Is that what you mean by that? Is that what you're referring to? Well, he says that they were not made tighter because they were as tight as they could be. But I think that that is – Well, it's like saying, you know, I'm hanging by the neck and I can't get any tighter. That's worse. That's actually a little misleading. I disagree. Because, no, it is, because you're saying that he said they weren't made tighter, but he'd already said they were as tight as they could be, and he's complaining about them. So I'm not so sure. I mean, I don't know that you're helping yourself here. The allegation that they were as tight as could be is not supported by the undisputed evidence in the record. Exactly. That's why we need a trial, right? No, no. This case so far has been resolved in their version of the events. As you look at the other handcuffing cases, cases where the handcuffs were as tight as they could be, hands swell up like balloons, hands turn black and purple, wrists are crushed. None of that is here. He says he went to the hospital. He says he's injured. There was some kind of evidentiary problem with his medical records. Maybe they're not real records. Maybe they are. But, like, at this point, how do we have any idea? Respectfully, Your Honor, I think that gets away from the Fourth Amendment problem and into generalized civil procedure. If he was on a ---- Well, but that's what happens with discovery. You find out other things. And here he's saying he's got nerve damage from the handcuffs. But he's not saying that he wasn't able to come up with the evidence because he was denied discovery. He had the evidence. He just didn't properly authenticate it to get it into the record. And I think that the ---- Point. Okay. I think we have your issue in mind. Thank you very much. You have a short time for a rebuttal. Your Honor, I think you hit the nail on the head. We're hearing one story from the defendants and another story from the plaintiffs. And that's what we're here about. The district court is not in a position on a motion for summary judgment to decide the factual issues and to decide the disputes of fact. Did you ask under 56F for discovery at that point? We did. We did, Your Honor. And what did the district court say? He said we did not do it properly. And I don't ---- I'm sorry. We did not what? That we didn't do it properly. And I don't know that that's correct, but that wasn't a part of our appeal. Our appeal was mainly that there are disputed issues of fact that should go to a jury. And, Your Honor, if you don't have any additional questions, I would ask for a remand to the district court. All right. Thank you. I'd like to thank both of you for coming from Nevada to argue the case today. The case of Thompson and Battershell v. Lake is submitted. And we're adjourned for the morning. All rise. The court for this session stands adjourned.
judges: McKeown, Murguia, Friedland